**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| HEXARMOR, LIMITED PARTNERSHIP,<br>a Michigan Limited Partnership,<br><br>Plaintiff,<br><br>v.<br><br>SAFETY TEST & EQUIPMENT COMPANY, INC.,<br>a North Carolina company,<br><br>Defendant. | Case No.<br><br>Hon.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, HexArmor, Limited Partnership ("HexArmor" or "Plaintiff"), by and through its undersigned counsel, hereby files this Complaint against Safety Test & Equipment Company, Inc. ("Safety Test" or "Defendant"), and states as follows:

1. These claims establish a civil action for trademark infringement, trade dress infringement, unfair completion, dilution, injunctive relief, and damages arising under the Lanham Act, 15 U.S.C. § 1051 et seq., and Michigan statutory and common law, including under the Michigan Consumer Protection Act, MCL 445.901, et seq.

**PARTIES**

2. HexArmor, Limited Partnership ("HexArmor") is a Limited Partnership of Michigan having its principal place of business at 640 Leffingwell Ave., N.E., Grand Rapids, Michigan 49505.

3. Safety Test & Equipment Company, Inc. ("Safety Test") is a North Carolina corporation having its principal place of business at 107 Cherryville Road, Shelby, North Carolina 28150.

## JURISDICTION AND VENUE

4. This is an action for trade dress infringement, dilution, trademark infringement, and unfair competition in violation of Sections 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a), 1125(c), trade dress infringement, and trademark infringement and unfair competition in violation of Michigan statutory and common law.

5. This Court has original subject matter jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), and has supplemental jurisdiction under 28 U.S.C. § 1367(a). Venue is proper in the District pursuant to 28 U.S.C. § 1391(b). This Court also has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the parties' citizenship is diverse and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6. Upon information and belief, Safety Test is subject to the jurisdiction of this Court because it does business in the state of Michigan and has transacted business relating to the subject matter of the claims asserted here in the state of Michigan and within this District.

## BACKGROUND OF HEXARMOR AND ITS VISUALLY DISTINCTIVE TRADEMARKS AND TRADE DRESS

7. HexArmor is a world market leader in high-quality protective clothing, including, but not limited to, gloves and safety equipment. For over twenty-three (23) years, HexArmor has developed a reputation as an industry leader in protective clothing.

8. HexArmor offers a wide variety of protective gloves. These protective gloves have a number of visually distinctive trade dress elements which include, but are not limited to, the color schemes and patterns of raised elements on the backs of the gloves. These trade dress elements are not functional and are visually distinctive as a source identifier.

9. Competitors in the safety glove market have manufactured and sold protective gloves that have different color schemes and patterns of raised elements. Thus, HexArmor's exclusive use of the distinctive trade dress does not put competitors at a significant non-reputation-related disadvantage.

10. There are no utility patents related to the color schemes and patterns of raised elements. HexArmor's distinctive trade dress is not functional.

11. HexArmor has been able to obtain federal trademark registrations for a number of its distinctive safety gloves. This includes, but is not limited to, U.S. Trademark Reg. Nos. 4607449 ('449 Registration) and 4557699 ('699 Registration) (attached as Exhibits 1 & 2).

12. Through extensive sales, use, and promotion of the safety gloves, the safety glove market has come to associate HexArmor with the aforementioned trade dress.

13. The aforementioned trade dress is distinctive and represents substantial goodwill and is a valuable commercial asset.

14. HexArmor has an industry-wide reputation for exclusively manufacturing and marketing the highest quality product, including the visually distinctive design and trade dress associated with HexArmor's safety gloves.

15. HexArmor also uses a number of product numbers that serve as trademarks. These product numbers have become distinctive through substantial sales, advertising, and promotion and serve to identify HexArmor as the source of a particular glove.

16. HexArmor's safety glove trade dress and numerical trademarks qualify for the broadest scope of protection from infringement and unauthorized use available under federal and state law.

**SAFETY TEST AND ITS UNLAWFUL ACTIVITIES**

17. Upon information and belief, Safety Test, in common with the public, is well aware of the vast and valuable goodwill and reputation represented and symbolized by HexArmor's trade dress and numerical marks.

18. On information and belief, Safety Test willfully and in disregard for HexArmor's lawful rights decided to advertise and sell knockoffs of HexArmor's distinctive safety gloves.

19. On information and belief, Safety Test will continue to advertise, sell, and offer to sell, in this and other districts, Safety Test's knockoffs of the HexArmor safety gloves unless enjoined by this Court.

20. On information and belief, Safety Test's acts are with knowledge of HexArmor's trademark and trade dress rights here at issue.

21. On information and belief, Safety Test deliberately chose and continues to use the trade dress and numerical marks to call to mind and associate its products with HexArmor and HexArmor's products and to appropriate and benefit from HexArmor's reputation and goodwill.

22. Upon information and belief, Safety Test is, was, and continues to be well aware of the valuable goodwill and reputation represented by HexArmor's trade dress and number trademarks.

23. Safety Test's products were calculated to be sold, are being sold, and are likely to continue to be sold, throughout the United States in the same markets as HexArmor's gloves. Upon information and belief, Safety Test derives and will continue to derive substantial revenue from sales of the products in interstate commerce.

24. Safety Test's activities are likely to cause confusion or mistake or to deceive consumers into believing that its safety gloves are manufactured by HexArmor or are sponsored, licensed, or authorized by, or affiliated, connected, or otherwise associated with HexArmor or its products. This confusion is likely to cause, has caused, and will continue to cause the trade dress and number trademarks to lose their ability to serve as unique identifiers of HexArmor's gloves.

24. Safety Test's actions as aforementioned are intentional, willful, and in bad faith, and were committed with full knowledge of HexArmor's trade dress and number trademarks and HexArmor's exclusive right to use and control the use of such trade dress and trademarks.

25. Safety Test has acted and continues to act intentionally, willfully, and in bad faith with the intent to capitalize upon HexArmor's property rights and goodwill.

26. Safety Test's use of the trade dress and number trademarks has significantly injured HexArmor's interests and will continue to do so unless immediately enjoined. Specifically, Safety Test (a) has traded upon and threatens to trade upon the significant and valuable goodwill established by HexArmor; (b) has, is, and will continue to cause confusion among the public as to the source of and affiliation with HexArmor's gloves; and (c) has damaged and threatens to further damage the significant and valuable goodwill established by HexArmor.

27. HexArmor has no adequate remedy at law.

**COUNT I**
**TRADE DRESS INFRINGEMENT**

28. HexArmor realleges and incorporates by reference the allegations of paragraphs 1 through 27 above.

29. Since at least as early as 2011, HexArmor has manufactured, advertised, and sold a distinctive design of and trade dress associated with the HexArmor 2020 Rig Lizard Glove as

shown in part by common law and the ‘449 Registration. HexArmor’s visually distinctive Rig Lizard Glove has a quality exclusively controlled by HexArmor.




30. Safety Test is offering for sale an infringing design incorporating substantially all of the features of the distinctive trade dress associated with HexArmor’s Rig Lizard 2020 gloves. The Safety Test knockoff HexArmor Rig Lizard is marketed under the designation “STE-2020” and is depicted below:



31. On information and belief, Safety Test is continuing to advertise, sell, and offer to sell, in this and other districts, Safety Test's knockoff of the HexArmor Rig Lizard 2020.

32. Safety Test's acts are with knowledge of HexArmor's trademark and trade dress rights here at issue.

33. As a result of HexArmor's long, widespread, and continuous use of the trade dress and related sales, advertising, and promotion, the visually distinctive HexArmor Rig Lizard 2020 trade dress has become distinctive and a famous.

34. Safety Test's use of the trade dress will or will likely cause confusion as to the source of the goods.

35. Safety Test's use of the trade dress also constitutes a false designation of origin under 15 U.S.C. § 1125.

36. Safety Test's aforesaid acts greatly and irreparably damage HexArmor and will continue to damage HexArmor unless restrained by this Court, wherefore, HexArmor is without an adequate remedy at law.

**COUNT II**
**TRADE DRESS INFRINGEMENT**

37. HexArmor realleges and incorporates by reference the allegations of paragraphs 1 through 36 above.

38. Since at least as early as 2010, HexArmor has manufactured, advertised, and sold a distinctive design of and trade dress associated with the HexArmor Chrome Series 4080 as shown in part by common law and the '699 Registration. HexArmor's visually distinctive Chrome Series Glove has a quality exclusively controlled by HexArmor.



39. Safety Test is offering for sale an infringing design incorporating substantially all of the features of the distinctive trade dress associated with HexArmor's Chrome Series 4080. The Safety Test knockoff HexArmor Chrome Series 4080 is marketed under the designation "HA-4080" and is depicted below:



40. On information and belief, Safety Test is continuing to advertise, sell, and offer to sell, in this and other districts, Safety Test's knockoff of the HexArmor Chrome Series 4080.

41. Safety Test's acts are with knowledge of HexArmor's trademark and trade dress rights here at issue.

42. As a result of HexArmor's long, widespread, and continuous use of the trade dress and related sales, advertising, and promotion, the visually distinctive HexArmor Chrome Series 4080 trade dress has become distinctive and famous.

43. Safety Test's use of the trade dress will or will likely cause confusion as to the source of the good.

44. Safety Test's use of the trade dress also constitutes a false designation of origin under 15 U.S.C. § 1125.

45. Safety Test's aforesaid acts greatly and irreparably damage HexArmor and will continue to damage HexArmor unless restrained by this Court, wherefore, HexArmor is without an adequate remedy at law.

**COUNT III**
**TRADE DRESS INFRINGEMENT**

46. HexArmor realleges and incorporates by reference the allegations of paragraphs 1 through 45 above.

47. Since at least as early as 2010, HexArmor has manufactured, advertised, and sold a distinctive design of and trade dress associated with the HexArmor Chrome SLT 4073 as shown in part by common law and the '699 Registration. HexArmor's visually distinctive Chrome SLT Glove has a quality exclusively controlled by HexArmor.




48. Safety Test is offering for sale an infringing design incorporating substantially all of the features of the distinctive trade dress associated with HexArmor's Chrome SLT 4073. The Safety Test knockoff HexArmor Chrome SLT 4073 is marketed under the designation "HA-4073" and is depicted below:



49. On information and belief, Safety Test is continuing to advertise, sell, and offer to sell, in this and other districts, Safety Test's knockoff the HexArmor Chrome SLT 4073.

50. Safety Test's acts are with knowledge of HexArmor's trademark and trade dress rights here at issue.

51. As a result of HexArmor's long, widespread, and continuous use of the trade dress and related sales, advertising, and promotion of the visually distinctive HexArmor Chrome SLT 4073 has become distinctive and famous.

52. Safety Test's use of the trade dress will or will likely cause confusion as to the source of the goods.

53. Safety Test's use of the trade dress also constitutes a false designation of origin under 15 U.S.C. § 1125.

54. Safety Test's aforesaid acts greatly and irreparably damage HexArmor and will continue to damage HexArmor unless restrained by this Court, wherefore, HexArmor is without an adequate remedy at law.

**COUNT IV**
**TRADE DRESS INFRINGEMENT**

55. HexArmor realleges and incorporates by reference the allegations of paragraphs 1 through 54 above.

56. Since at least as early as 2010, HexArmor has manufactured, advertised, and sold a distinctive design of and trade dress associated with HexArmor Chrome SLT 4073W as shown in part by common law and the '699 Registration. HexArmor's visually distinctive Chrome SLT 4073W has a quality exclusively controlled by HexArmor.




57. Safety Test is offering for sale an infringing design incorporating substantially all of the features of the distinctive trade dress associated with HexArmor's Chrome SLT 4073W. The Safety Test knockoff HexArmor Chrome SLT 4073W is marketed under the designation "HA-4073W" and is depicted below:



58. On information and belief, Safety Test is continuing to advertise, sell, and offer to sell, in this and other districts, Safety Test's knockoff the HexArmor Chrome SLT 4073W.

59. Safety Test's acts are with knowledge of HexArmor's trademark and trade dress rights here at issue.

60. As a result of HexArmor's long, widespread, and continuous use of the trade dress and related sales, advertising, and promotion, the visually distinctive HexArmor Chrome SLT 4073W by the trade and consumers of HexArmor, the design of the visually distinctive HexArmor Chrome SLT 4073W has become distinctive and famous.

61. Safety Test's use of the trade dress will or will likely cause confusion as to the source of the goods.

62. Safety Test's use of the trade dress also constitutes a false designation of origin under 15 U.S.C. § 1125.

63. Safety Test's aforesaid acts greatly and irreparably damage HexArmor and will continue to damage HexArmor unless restrained by this Court, wherefore, HexArmor is without an adequate remedy at law.

**COUNT V**
**TRADE DRESS INFRINGEMENT**

64. HexArmor realleges and incorporates by reference the allegations of paragraphs 1 through 63 above.

65. Since at least as early as 2010, HexArmor has manufactured, advertised, and sold a distinctive design of and trade dress associated with the HexArmor HeatArmor 5055. HexArmor's visually distinctive HeatArmor 5055 has a quality exclusively controlled by HexArmor.




66. Safety Test is offering for sale an infringing design incorporating substantially all of the features of the distinctive trade dress associated with HexArmor's HeatArmor 5055, as shown in part by common law and the '699 Registration. The Safety Test knockoff HexArmor HeatArmor 5055 is marketed under the designation "HA-5055" and is depicted below:



67. On information and belief, Safety Test is continuing to advertise, sell, and offer to sell, in this and other districts, Safety Test's knockoff of the HexArmor HeatArmor 5055.

68. Safety Test's acts are with knowledge of HexArmor's trademark and trade dress rights here at issue.

69. As a result of HexArmor's long, widespread, and continuous use of the trade dress and relates sales, advertising, and promotion, the visually distinctive HexArmor HeatArmor 5055 has become distinctive and famous.

70. Safety Test's use of the trade dress will or will likely cause confusion as to the source of the goods.

71. Safety Test's use of the trade dress also constitutes false designation of origin under 15 U.S.C. § 1125.

72. Safety Test's aforesaid acts greatly and irreparably damage HexArmor and will continue to damage HexArmor unless restrained by this Court, wherefore, HexArmor is without an adequate remedy at law.

**COUNT VI**
**TRADE DRESS INFRINGEMENT**

73. HexArmor realleges and incorporates by reference the allegations of paragraphs 1 through 72 above.

74. Since at least as early as 2022, HexArmor has manufactured, advertised, and sold a distinctive design of and trade dress associated with the HexArmor HeatArmor 5050. HexArmor's visually distinctive HeatArmor 5050 has a quality exclusively controlled by HexArmor.




75. Safety Test is offering for sale an infringing design incorporating substantially all of the features of the distinctive trade dress associated with HexArmor's HeatArmor 5050. The Safety Test knockoff HexArmor HeatArmor 5050 is marketed under the designation "HA 5050" and is depicted below:



76. On information and belief, Safety Test is continuing to advertise, sell, and offer to sell, in this and other districts, Safety Test's knockoff of the HexArmor HeatArmor 5050.

77. Safety Test's acts are with knowledge of HexArmor's trademark and trade dress rights here at issue.

78. As a result of HexArmor's long, widespread, and continuous use of the trade dress and related sales, advertising, and promotion, the visually distinctive HexArmor HeatArmor 5050 has become distinctive and famous.

79. Safety Test's use of the trade dress will or will likely cause confusion as to the source of the goods.

80. Safety Test's use of the trade dress also constitutes a false designation of origin under 15 U.S.C. § 1125.

81. Safety Test's aforesaid acts greatly and irreparably damage HexArmor and will continue to damage HexArmor unless restrained by this Court, wherefore, HexArmor is without an adequate remedy at law.

**COUNT VII**
**TRADE DRESS INFRINGEMENT**

82. HexArmor realleges and incorporates by reference the allegations of paragraphs 1 through 81 above.

83. Since at least as early as 2011, HexArmor has manufactured, advertised, and sold a distinctive design of and trade dress associated with the HexArmor Rig Lizard 2092 as shown in part by common law and the '449 Registration. HexArmor's visually distinctive Rig Lizard 2092 has a quality exclusively controlled by HexArmor.




84. Safety Test is offering for sale an infringing design incorporating substantially all of the features of the distinctive trade dress associated with HexArmor's Rig Lizard 2092. The Safety Test knockoff HexArmor Rig Lizard 2092 is marketed under the designation "HA-2092" and is depicted below:



85. On information and belief, Safety Test is continuing to advertise, sell, and offer to sell, in this and other districts, Safety Test's knockoff of the HexArmor Rig Lizard 2092.

86. Safety Test's acts are with knowledge of HexArmor's trademark and trade dress rights here at issue.

87. As a result of HexArmor's long, widespread, and continuous use of the trade dress and related sales, advertising, and promotion, the visually distinctive HexArmor Rig Lizard 2092 trade dress has become distinctive and famous.

88. Safety Test's use of the trade dress will or will likely cause confusion as to the source of goods.

89. Safety Test's use of the trade dress also constitutes false designation of origin under 15 U.S.C. § 1125.

90. Safety Test's aforesaid acts greatly and irreparably damage HexArmor and will continue to damage HexArmor unless restrained by this Court, wherefore, HexArmor is without an adequate remedy at law.

**COUNT VIII**
**TRADEMARK INFRINGEMENT**

91. HexArmor realleges and incorporates by reference the allegations of paragraphs 1 through 90 above.

92. As noted above, HexArmor utilizes the unique numerical trademarks as a source identifier. These numerical marks are distinctive and identify and distinguish HexArmor as the source of the safety gloves.

93. Safety Test has begun using the same numerical trademarks associated with the knockoff gloves with full knowledge of HexArmor's prior use of these numerical trademarks for the purpose of trading upon HexArmor's goodwill and giving Safety Test's product a salability it otherwise would not have.

94. Safety Test's use of these numerical trademarks is likely to cause confusion, mistake, or deception as to the source of origin, sponsorship, or approval of Safety Test's products, in that purchasers or others are likely to believe Safety Test's products are HexArmor's products or the products of a company legitimately connected with, approved by, or related to HexArmor.

95. Safety Test's use of these numerical trademarks enables Safety Test to represent and deceptively advertise, merchandise, market, display, and promote that Safety Test's products as emanating from HexArmor or from a concern legitimately connected with or approved by HexArmor and to substitute and pass off Safety Test's products as HexArmor's products.

96. Safety Test's aforesaid acts constitute imitation, counterfeiting, and infringement of HexArmor's trademark rights in interstate commerce in violation of the Lanham Act, 15 U.S.C. § 1114, § 1125 and/or under the common laws of various states, including the State of Michigan, and said use constitutes willful infringement of HexArmor's trademark rights.

97. Safety Test's aforesaid acts greatly and irreparably damage HexArmor and will continue to damage HexArmor unless restrained by this Court, wherefore, HexArmor is without an adequate remedy at law.

**COUNT IX**
**UNFAIR COMPETITION**

98. HexArmor realleges and incorporates by reference the allegations of paragraphs 1 through 97 above.

99. Safety Test's aforementioned use in commerce of HexArmor's trade dress and numerical trademarks has caused, is causing, and will continue to cause consumer confusion as

to the source, identity, and origin in violation of the Lanham Act and Michigan common law. Such use is unauthorized.

100. As a direct a proximate result of Safety Test's actions, HexArmor has suffered and will continue to suffer great damage to its business, goodwill, reputation, profits, and the strength of its trademark. The injury to HexArmor is and continues to be ongoing and irreparable. An award of monetary damages alone cannot fully compensate HexArmor for its injuries.

101. Safety Test's aforesaid acts constitute unfair competition with HexArmor in violation of the common law of the State of Michigan and the Lanham Act.

**COUNT X**
**DILUTION OF TRADE DRESS AND TRADEMARK**

102. HexArmor realleges and incorporates herein by reference the allegations of paragraphs 1 through 101.

103. As a result of HexArmor's long, widespread, and continued use of the visually distinctive trade dress and numerical trademarks, the visually distinctive trade dress and the numerical trademarks have become a famous mark under 15 U.S.C. § 1125(c).

104. Safety Test's use of the trade dress and numerical trademarks will or will likely cause the dilution of the distinctive quality of the famous trade dress and numerical trademarks.

105. Safety Test's use of the famous trade dress and numerical trademarks is with willful intent to trade upon the reputation of HexArmor and is intended to cause dilution of the famous trade dress and numerical trademarks.

106. Safety Test's aforesaid acts greatly and irreparably damage HexArmor and will continue to damage HexArmor unless restrained by this Court, wherefore, HexArmor is without an adequate remedy at law.

**COUNT XI**
**UNFAIR COMPETITION IN VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT**

107. HexArmor realleges and incorporates herein by reference the allegations of paragraphs 1 through 106.

108. Safety Test's infringing use of the trade dress and numerical trademarks violates the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901 et seq., because they have caused, and continue to cause, a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods.

109. Upon information and belief, Safety Test has received substantial revenues and substantial profits as a result of the infringing use of the trade dress and numerical trademarks, to which Safety Test is not entitled, and HexArmor has also suffered damages as a result of the infringing use, for which Safety Test is responsible.

110. Safety Test's unlawful conduct as set forth herein has been and continues to be willful, deliberate, and in bad faith, with knowledge that such conduct was and is in direct contravention of HexArmor's trademark rights.

111. HexArmor and the general public have been, and continue to be, irreparably damaged by the violation of this statute, and HexArmor has no adequate remedy at law. Unless enjoined, Safety Test will continue to infringe upon HexArmor's registered mark, causing further injury to HexArmor and confusing the public.

**PRAYER FOR RELIEF**

WHEREFORE, HexArmor prays and demands judgment:

A. Preliminarily and permanently enjoining and restraining Safety Test and its respective officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with Safety Test from using HexArmor's trade dress and numerical trademarks, or any trade dress or mark that is confusingly or deceptively similar.

B. Directing such other relief as the Court may deem appropriate to prevent the trade and public from forming any erroneous impression that any product sold or otherwise distributed or promoted by Safety Test is authorized by HexArmor or related in any way to HexArmor's products.

C. Directing Safety Test, pursuant to 15 U.S.C. § 1118, to destroy all literature, signs, labels, prints, packages, wrappers, containers, advertising materials, Internet content, social media, stationary, software, and any other items in their possession or control which contain the infringing trade dress and/or numerical trademarks and to destroy all plates, molds, matrices, masters, and other mean of making any of those infringing items.

D. Directing Safety Test to file with the Court and to serve upon HexArmor within thirty (30) days after service of an injunction in this action, a written report by Safety Test, under oath, setting forth in detail the manner in which Safety Test has complied with the injunction.

E. Awarding HexArmor all damages permitted by 15 U.S.C. § 1117, including trebled damages, Safety Test's profits, and statutory damages.

F. Awarding HexArmor all profits, gains, benefits, and advantages derived by Safety Test from its conduct as alleged herein.

G. Awarding HexArmor its damages by reason of Safety Test's acts of common law trademark infringement, unfair competition, and federal dilution in an amount to be established at trial.

H. Awarding HexArmor exemplary and/or punitive damages by reason of Safety Test's willful, intentional, and malicious acts described herein, in an amount to be established at trial.

I. Determine that this case is exceptional under 15 U.S.C. § 1117 and award HexArmor reasonable attorney fees and the costs of this action.

J. Awarding HexArmor such further relief as this Court deems just and proper.

**JURY TRIAL**

HexArmor demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: October 7, 2026

s/Matthew J. Gipson
Matthew J. Gipson, P60169
mgipson@priceheneveld.com
PRICE HENEVELD LLP
3400 Innovation Ct., S.E. | P.O. Box 2567
Grand Rapids, MI 49501 | 616.949.9610